951 So.2d 1168 (2007)
Jerry BEARD
v.
SEACOAST ELECTRONICS, INC.
No. 2006-CA-1244.
Court of Appeal of Louisiana, Fourth Circuit.
January 24, 2007.
*1169 Alexandra E. Mora, Law Office of Alexandra Mora, New Orleans, LA, for Jerry Beard.
S. Mark Klyza, Rachel E. Linzy, The Kullman Firm, A.P.L.C., New Orleans, LA, for Seacoast Electronics, Inc.
(Court Composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS Jr.).
MAX N. TOBIAS, Jr., Judge.
The plaintiff/appellant, Jerry Beard ("Beard"), appeals from the summary judgment entered in favor of the defendant/appellee, Seacoast Electronics, Inc. ("Seacoast"), partially dismissing Beard's suit. After reviewing the record and applicable law, we affirm the judgment.
Seacoast services and inspects marine electronic equipment. Beard was hired by Seacoast in December 2004 as a field engineer/technician. One of Beard's duties was to inspect marine electronic equipment on ocean-going vessels. Beard was originally stationed at Seacoast's Jacksonville, Florida office, but was transferred to the New Orleans office on 7 March 2005.
On or about 22 March 2005, Beard drafted a letter to Seacoast's president, Art Thomas ("Thomas"), expressing his dissatisfaction and frustration with his co-workers and the New Orleans office. Beard did not send the letter at that time.
On 28 March 2005, Beard was assigned to inspect a vessel. During the inspection, he concluded that a piece of the ship's equipment, an EPIRB (one of the vessel's ways to emit a distress signal) was broken, and that he could not issue a valid certification based on his understanding of the Federal Communications Commission ("FCC") rules. Seacoast representatives disagreed with Beard and issued the certificate to the vessel.
On 30 March 2005, Beard drafted a second letter to Thomas expressing his concern that the issuance of the certification did not comply with FCC rules. Beard e-mailed his 22 March and 30 March 2005 letters to Thomas on 30 March.
By e-mail communication dated 31 March 2005, Thomas informed Beard that he viewed the 22 March letter as a resignation, which Thomas accepted. Beard contends that he was terminated because he complained about Seacoast's issuance of the above-referenced certification which he contends violated FCC rules.
On 12 May 2005, May Beard filed suit, alleging, inter alia, that his termination violated the Louisiana Whistleblower Statute, *1170 La. R.S. 23:967.[1] It is uncontested that Beard relies only on federal law as the only legal authority allegedly violated by Seacoast.
Seacoast filed a motion for summary judgment on the basis that the Louisiana Whistleblower Statute, La. R.S. 23:967, does not protect private persons unless they allege a violation of state law. The trial court granted summary judgment in Seacoast's favor on 14 July 2006, and designated the ruling as a final judgment after an express determination that no just reason for delay existed. This devolutive appeal followed.
As an appellate court, we are bound to review the trial court's summary judgment de novo. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions on file, and/or affidavits show that no genuine issue of material fact exists. La. C.C.P. art. 966 B. Summary judgment is favored and is designed to secure "the just, speedy, and inexpensive determination" of litigation. La. C.C.P. art. 966 A(2). If a plaintiff fails to put forth evidence that he can carry his burden at trial on any crucial element of the cause of action asserted, summary judgment is appropriate. La. C.C.P. art. 966 C(2).
The Louisiana Whistleblower Statute provides protection to an employee against reprisal from the employer for reporting or refusing to participate in illegal work practices.[2] Seacoast argues that it is clear from the wording of the statute and prior jurisprudence that Beard must allege a violation of state law in order to prevail on the merits of the case. Beard contends, however, that because La. R.S. 23:967(A)(3), reads "violation of law," his cause of action is not limited to state law violations, but encompasses violations of federal law as well.
In Hale v. Touro Infirmary, 04-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, writ denied, 05-0103 (La.3/24/05), 896 So.2d 1036, the same issue was presented to the court as a matter of first impression. In that case, we stated:
We further agree that the violation of law in question must be that of a state statute. The first subsection detailing under what circumstances an employer may not take "reprisals" clearly states that the employee must be aware of a violation of state law. The two subsequent subsections prohibit reprisals against employees who not only know of the violation and report it to their employers, but who also testify before public bodies or simply refuse to participate in the illegal activity. Although the language of the statute is inconsistent, the interpretation that is supported by the structure and that fits best into the framework of the statute is one that *1171 holds the statute to its most specific terms, i.e., violations of state law only.
Id. at pp. 9-10, 886 So.2d at 1216. (Footnotes omitted.)
Beard relies on federal law rendered before Hale to support his position that La. R.S. 23:967(A)(3) permits him to sue for violations of federal law. However, while decisions of federal appellate courts are considered persuasive, they are not binding on the courts of this state. State v. White, 321 So.2d 491, 494 (La.1975). In addition, Beard argues that we need not follow any precedent as a civilian court. We, however, find that our decision in Hale is directly on point and, therefore, is binding precedent on this court.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Beard also asserted a claim for defamation that is not before this court; that part of his suit remains unresolved.
[2] La. R.S. 23:967 reads as follows:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.